UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERELL L. CHAPMAN,

               Petitioner,

                                        Case No. 24-12303

v.                                U.S. DISTRICT COURT JUDGE

                                        GERSHWIN A. DRAIN

ADAM DOUGLAS,

               Respondent.

_____/

## OPINION AND ORDER DENYING PETITIONER JERELL L. CHAPMAN'S PETITION FOR A WRIT OF HABEAS CORPUS [#1], DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

## I.   INTRODUCTION

Following a jury trial in Kent County Circuit Court, Petitioner Jerell L. Chapman was convicted of (1) second-degree murder under MICH. COMP. LAWS 750.317; (2) assault with intent to commit murder ("AWIM") under MICH. COMP. LAWS 750.83; (3) firearm discharge from a vehicle causing death under MICH. COMP. LAWS 750.234a(1)(d); and (4) three counts of possession of a firearm during the commission of a felony ("felony-firearm") under MICH. COMP. LAWS 750.227b. *People v. Chapman*, No. 362743, 2024 WL 389645, at *1 (Mich. Ct. App. Feb. 1, 2024). Pursuant to 28 U.S.C. § 2254, Petitioner, incarcerated at the Saginaw

1

Correctional Facility in Freeland, Michigan, filed a petition for a writ of habeas corpus with this Court. He claims he is entitled to habeas relief because (1) the prosecution failed to prove that he did not act in self-defense; (2) the prosecution violated his Fourteenth Amendment due process rights and Fifth Amendment right against self-incrimination by using his post-*Miranda* silence and request for counsel as evidence that he did not act in self-defense; and (3) his sentence is unreasonable and disproportionate to the offense and the offender. For the reasons that follow, Petitioner's petition for a writ of habeas corpus is DENIED.

## II.   BACKGROUND

On October 2, 2020, the victim and his friends JO, AG, and AS drove to the mall in the victim's vehicle to buy a video game at a GameStop store. Petitioner and his girlfriend, KB, were also at the store and waited in line for their turn to check out at the same time as JO. While KB was at the register, JO headed toward the store's exit, but then turned around to asked Petitioner if there was a problem. A verbal altercation ensued until KB physically pulled Petitioner away from JO. When Petitioner and KB exited the GameStop store, they found JO waiting for them with the victim and AG. Petitioner and KB testified that the victim, JO, and AG were pushing them to fight and continued to follow them to the parking lot. AG testified that the parties decided to meet at the parking lot across the street to get away from

the store's surveillance cameras to fight. Petitioner, however, denied making any such agreement.

The parties separated and drove away from the mall in their respective vehicles. AG and JO both testified that they followed Petitioner's vehicle. At some point, Petitioner stopped his vehicle parallel to the victim's vehicle. Petitioner and JO argued back and forth, and Petitioner testified that JO and AG were antagonizing him. He also testified that he then saw JO hold up a handgun, so he decided to shoot to protect himself and KB. Petitioner fired eight shots at the victim's vehicle and then drove away. Although an airsoft .177 caliber "BB gun" was found by police inside of the victim's vehicle with an undisturbed candy wrapper on top of it, AG, JO, AS, and KB all denied seeing the BB gun brandished that night.

Following a jury trial in Kent County Circuit Court, Petitioner was convicted of (1) second-degree murder under MICH. COMP. LAWS 750.317; (2) AWIM under MICH. COMP. LAWS 750.83; (3) firearm discharge from a vehicle causing death under MICH. COMP. LAWS 750.234a(1)(d); and (4) three counts of felony-firearm under MICH. COMP. LAWS 750.227b. The trial court sentenced Petitioner to 30 to 45 years imprisonment for the second-degree murder conviction, 19 to 30 years imprisonment for the AWIM conviction, 19 to 30 years imprisonment for the firearm discharge from a vehicle causing death conviction, and two consecutive years imprisonment for the felony-firearm convictions. Petitioner appealed to the Michigan Court of

Appeals, which affirmed the trial court's decisions. The Michigan Supreme Court denied Petitioner's application for leave to appeal the Michigan Court of Appeals' decision. *People v. Chapman*, 513 Mich. 1110 (Mich. 2024).

Petitioner, incarcerated at the Saginaw Correctional Facility in Freeland, Michigan, has filed a petition for a writ of habeas corpus with this Court pursuant to 28 U.S.C. § 2254. He contends that (1) the prosecution failed to prove that he did not act in self-defense; (2) the prosecution violated his Fifth and Fourteenth Amendment right to a fair trial by using his post-*Miranda* silence and request for counsel as evidence that he did not act in self-defense; and (3) his sentence is unreasonable and disproportionate to the offense and the offender.

## III.   **LEGAL STANDARD**

Title 28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## IV.   ANALYSIS

### A. Sufficiency of the Evidence

Petitioner claims the prosecutor presented insufficient evidence to disprove that he acted in self-defense. This claim, however, is not cognizable on habeas

review. *See Hayes v. Horton*, 596 F. Supp. 3d 978, 989 (E.D. Mich. 2022). Self-defense is an affirmative defense under Michigan law. *See People v. Dupree,* 486 Mich. 693, 704 (Mich. 2010). "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime.' " *People v. Reese*, 491 Mich. 127, 155 n.76 (Mich. 2012) (quoting *Dupree,* 486 Mich. at 704 n.11). Although Michigan law requires a prosecutor to disprove a claim of self-defense, *see People v. Watts*, 61 Mich. App. 309, 311 (Mich. Ct. App. 1975), "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required." *Smith v. United States,* 568 U.S. 106, 110 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). Furthermore, "[i]n those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt." *Hayes*, 596 F. Supp. 3d at 989 (citation omitted); *see also Allen v. Redman*, 858 F.2d 1194, 1197 (6th Cir. 1988) (explaining that habeas review of the sufficiency-of-the -evidence claims is limited to elements of the crimes as defined by state law). Therefore, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell,* 181 F.3d 731,

740 (6th Cir. 1999), abrogated on other grounds by *Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000).

Even if this claim was cognizable on habeas review, Petitioner would not be entitled to habeas relief. It is well-settled that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The critical question on review of a sufficiency of the evidence claim is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 318-19 (citation omitted) (emphasis in original). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).

Furthermore, when considering a challenge to the sufficiency of the evidence to convict, the reviewing court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). A federal habeas court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—

7

that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith,* 565 U.S. 1, 7 (2011) (quoting *Jackson,* 443 U.S. at 326).

Under Michigan law, a person acts lawfully in self-defense if he honestly and reasonably believes that he is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F.3d 712, 713 n.1 (6th Cir. 1999) (citing *People v. Heflin*, 434 Mich. 482, 456 (Mich. 1990)). The evidence must show that: "(1) the defendant honestly and reasonably believed that he was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor." *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002) (citing *People v. Barker*, 437 Mich. 161, 165 (Mich. 1991); *People v. Kemp*, 202 Mich. App. 318, 322 (Mich. Ct. App. 1993); *People v. Deason*, 148 Mich. App. 27, 31 (Mich. Ct. App. 1985)). The defendant is not entitled to use any more force than is necessary to defend himself. *Id.* at 609 (citing *Kemp*, 202 Mich. App. at 322). "[T]he law of self-defense is based on necessity, and a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances." *Id.* (citation omitted).

8

On appeal to the Michigan Court of Appeals, Petitioner argued that the prosecution failed to meet its burden of disproving his theory of self-defense beyond a reasonable doubt. That court rejected this claim, reasoning:

> The prosecution presented the audio recording of a phone call that occurred between defendant and KB's grandmother while defendant was imprisoned. In this phone call, KB's grandmother told defendant that if the shooting was done in self-defense, defendant needed to explain to the authorities what happened that evening. Defendant promptly responded that "it had nothing to do with self-defense." This admission strongly undermined his claim of self-defense at trial.
>
> Defendant argues that his short stature and the fact that he was outnumbered and followed show that he honestly and reasonably believed that he was in danger of serious injury or death. However, if true, defendant could have chosen not to engage with JO when first confronted inside the GameStop store. Once JO and the others began following him and KB through the mall, he could have asked for help from mall security or simply stayed inside the mall within the presence of security cameras and the crowds of people. Instead, defendant continued to the parking lot and then agreed to engage in a fistfight at an alternate location without the presence of security cameras. The fact that defendant continued to engage with JO and the others indicates that he did not honestly and reasonably believe that he was in danger of serious injury or death, at least until the shooting itself.
>
> Notwithstanding the sequence of events preceding the shooting, defendant argues that he saw JO lift what he believed to be a handgun, and then he fired a shot at the victim's vehicle in response. It is true that an airsoft BB gun was found in the victim's vehicle and that brandishing it might justify a claim of self-defense. However, no one except defendant testified that the BB gun was brandished that night. Furthermore, the BB gun was found with a candy wrapper on top of it. If JO lifted the BB gun that evening as defendant testified, then after he held it up, he would have had to have placed it back in the compartment and neatly placed the wrapper on top of the BB gun after the chaotic shooting. This scenario seems unlikely, particularly in light of the fact that no one except defendant testified that the BB gun was brandished.

> Thus, the jury may have reasonably found that that the BB gun was not brandished as defendant testified. We are required to make this inference in favor of the prosecution, and conclude that defendant had no lawful basis to shoot at the other vehicle.

*Chapman*, 2024 WL 389645, at *3 (citation omitted).

The Michigan Court of Appeals reasonably concluded that the evidence, when viewed in a light most favorable to the prosecution, was sufficient for a rational trier of fact to reject Petitioner's self-defense claim. First, while Petitioner testified that JO had brandished a firearm at him, none of the four other witnesses present at the time of the shooting, including Petitioner's girlfriend, testified to seeing JO in possession of a firearm. In light of testimony from four eyewitnesses that JO was unarmed, a reasonable factfinder could find beyond a reasonable doubt that Petitioner did not honestly or reasonably fear that he was in imminent danger of death or serious bodily harm from the victim or his friends, and that he used far more force than necessary to defend himself.

Second, after the shooting, Petitioner fled the scene. Under Michigan law, flight is relevant to consciousness of guilt. *Johnson v. Burke*, 903 F.2d 1056, 1062 (6th Cir. 1990) (citations omitted). Under these facts, the jury could have reasonably discounted Petitioner's self-defense claim as incompatible with his actions after the shooting. *See Long v. Smith*, 663 F.2d 18, 22 (6th Cir. 1981) ("Ordinarily, a person who commits an act in self-defense does not flee from the law after committing his act."). Third, Petitioner told KB's grandmother that the shooting "had nothing to do

10

with self-defense." *Chapman*, 2024 WL 389645, at *3. This admission is further evidence from which a rational trier of fact could have rejected Petitioner's self-defense claim. Lastly, although Petitioner testified that he acted in self-defense and an airsoft gun was found in the murder victim's car, the gun was discovered beneath a candy wrapper, which could support an inference that the gun had not been recently used or moved.

For these reasons, Petitioner is not entitled to habeas relief on this claim.

### B. Prosecution's Reference to Petitioner's Post-*Miranda* Silence and Request for Counsel

Next, Petitioner claims he was deprived of due process and his Fifth Amendment right against self-incrimination because the prosecution used his post-*Miranda* silence and request for counsel as evidence that he did not act in self-defense.

"Under the Fifth Amendment, a suspect is guaranteed the right to remain silent and the right to the assistance of counsel during a custodial interrogation." *United States v. Hawkins*, 426 F. Supp. 3d 447, 455 (E.D. Mich. 2019) (citing *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). Moreover, it is a violation of the Due Process Clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence to impeach exculpatory testimony given by the defendant at trial. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). However, a single isolated reference to a defendant's post-*Miranda* silence does not contravene these constitutional

imperatives when the court sustains an objection to the only prosecutorial question touching upon a defendant's post-arrest silence, the prosecutor engages in no further questioning or argument with respect to the defendant's silence, and the judge specifically advises the jury that it should disregard any questions to which an objection was sustained. *See Greer v. Miller,* 483 U.S. 756, 764-65 (1987).

Petitioner raised this claim before the Michigan Court of Appeals, which rejected it as follows:

> In the present case, during cross examination, defendant testified that he did not tell police during his arrest that he was acting in self-defense because: "I did what my father told me to do and that was don't say too much to them. Talk to my lawyers, my attorneys." The prosecutor responded, "Well, why would you have to talk to a lawyer if you were defending yourself?" Defense counsel objected, and the trial court sustained the objection. The prosecution then asked defendant if he was advised of his rights after arrest, and defendant confirmed that he was. The question now is whether the prosecutor's reference to defendant's post-*Miranda* silence deprived him of his constitutional rights. . . .

> We acknowledge that the reference shed some light on defendant's credibility because it furthered the prosecutor's theory that defendant did not initially act in self-defense and only claimed self-defense as trial approached. However, the reference was "so minimal" that defendant's silence was not submitted to the jury as a means to draw a permissible inference; any inference about whether defendant acted in self-defense was drawn from the ample evidence presented by the prosecution throughout trial.

> We also note that the evidence against defendant was substantial. None of the eyewitnesses, other than defendant himself, testified that a BB gun was brandished. In addition, the prosecution played a phone call during trial in which defendant explicitly stated that his actions that day were not in self-defense. The strength of this untainted and independent

evidence leads to the conclusion that the prosecutor's fleeting reference to defendant's post-*Miranda* silence was harmless.

Accordingly, the prosecutor's reference to defendant's post-*Miranda* silence was harmless beyond a reasonable doubt and did not contribute to his convictions. Defendant is not entitled to relief on this basis.

*Chapman*, 2024 WL 389645, at *4–5 (citation omitted).

The Michigan Court of Appeals reasonably found that Petitioner is not entitled to relief on this claim. The prosecutor made one isolated reference to Petitioner's refusal to speak with the police. The judge immediately sustained an objection to the remark and instructed the jurors not to consider any evidence that had been stricken. On this basis, the prosecution's reference to Petitioner's post-*Miranda* silence did not violate his due process rights or his Fifth Amendment right against self-incrimination.

Even assuming, *arguendo*, the prosecution erred in asking a question about Petitioner's post-*Miranda* silence, the Michigan Court of Appeals reasonably concluded that any such error was harmless. When a state court determines that a constitutional error at trial is harmless, the petitioner is entitled to relief only "if he can satisfy two separate tests: (1) the test outlined in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and (2) the deferential review required by AEDPA." *Leigh v. Douglas*, No. 20-10545, 2024 WL 4311466, at *5 (E.D. Mich. Sept. 26, 2024) (cleaned up) (citing *Heiney v. Washington*, No. 23-1772, 2024 WL 759055 at * 3 (6th Cir. Feb. 9, 2024); *Brown v. Davenport*, 596 U.S. 118, 122 (2022)). "In short, a

13

federal court must *deny* relief to a state habeas petitioner who fails to satisfy either *Brecht* or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests." *Heinery*, 2024 WL 759055 at *3 (cleaned up).

*Brecht* requires a state prisoner seeking to challenge his conviction in habeas proceedings to show that the error had a "substantial and injurious effect or influence" on the outcome of his trial. 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A "substantial or injurious effect or influence" means "actual prejudice." *See id*. Meanwhile, "AEDPA asks whether *every* fairminded jurist would agree that an error was prejudicial." *Brown*, 596 U.S. at 136 (emphasis in original).

Here, Petitioner fails both tests. He has not shown that the prosecution's question had a substantial and injurious influence on the outcome of his case. As discussed above, the prosecution's reference to Petitioner's post-*Miranda* silence was brief. The prosecutor did not comment on the remarks, nor were the jurors asked to draw any inferences from Petitioner's silence or request for a lawyer. Furthermore, the judge sustained an objection to this question and instructed the jury to not consider stricken evidence. Most significantly, the evidence of Petitioner's guilt was overwhelming. Furthermore, based on these facts, this Court does not find that "*every* fairminded jurist would agree that an error was prejudicial." *Brown*, 596 U.S. 118 at 136 (emphasis in original). Therefore, any constitutional error resulting

14

from the prosecution's reference to Petitioner's post-*Miranda* silence and request for counsel was harmless.

For these reasons, Petitioner is not entitled to relief on this claim.

### C. Disproportionate Sentence

Lastly, Petitioner claims his sentence is "unreasonable and disproportionate to the offense and the offender" in violation of the Eighth Amendment. ECF No. 1, PageID.8; ECF No. 13, PageID.901. The Eighth Amendment does not require strict proportionality between a crime and its punishment. *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *see also United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (discussing that the gross disproportionality principle applies only in extraordinary cases); *Ewing v. California*, 538 U.S. 11, 36 (2003) (holding that the gross proportionality principle applies only in "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality").

A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment' " under the Eighth Amendment. *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Courts reviewing Eighth

Amendment proportionality claims must remain highly deferential to state legislatures in determining the appropriate punishments for crimes. *United States v. Layne*, 324 F.3d 464, 473-74 (6th Cir. 2003) (citing *Harmelin*, 501 U.S. at 999). "[T]he Sixth Circuit has recognized that 'only an extreme disparity between crime and sentence offends the Eighth Amendment.' " *Cowherd v. Million*, 260 F. App'x 781, 785 (6th Cir. 2008) (quoting *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000)). As long as the sentence remains within the statutory limits, trial courts have wide discretion in determining "the type and extent of punishment for convicted defendants." *See Williams v. New York*, 337 U.S. 241, 245 (1949).

Moreover, federal courts do not engage in a proportionality analysis except where the sentence imposed is death or life imprisonment without parole. *United States v. Thomas,* 49 F.3d 253, 261 (6th Cir. 1995).  Successful challenges to the proportionality of a particular sentence in non-capital cases are "exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).

Here, Petitioner was not sentenced to death or life in prison without the possibility of parole. His controlling sentence of 30 to 45 years of imprisonment for second-degree murder falls within the statutory limits for the offense, as the trial judge sentenced Petitioner to less than the maximum sentence of life imprisonment. Moreover, Petitioner's minimum sentence of 30 to 45 years was within the sentencing guidelines range of 22 ½  to 37 ½ years.  In Michigan, sentences within

a correctly scored guidelines range are presumptively proportionate. *Hastings v. Yukins,* 194 F. Supp. 2d 659, 673-74 (E.D. Mich. 2002) (citing to *People v. Bailey*, 218 Mich. App. 645, 647; 554 N.W.2d 391 (1996)).  For these reasons, the Court finds that Petitioner's sentence was not extreme or grossly disproportionate to the offense or to the offender so as to entitle him to habeas relief. As such, Petitioner is not entitled to relief on this claim.

In conclusion, none of Petitioner's claims merit habeas relief. Accordingly, his petition for a writ of habeas corpus is denied.

### D. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (internal quotations and citation omitted).

Here, reasonable jurists could not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the

Court declines to issue a certificate of appealability. However, although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous. Therefore, an appeal could be taken in good faith, and Petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. <u>CONCLUSION</u>

Based upon the foregoing, IT IS ORDERED that Petitioner's petition for a writ of habeas corpus [#1] is DENIED. IT IS FURTHER ORDERED that the Court declines to issue a certificate of appealability. IT IS FURTHER ORDERED that Petitioner may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

Dated: November 18, 2025        /s/Gershwin A. Drain
                                            GERSHWIN A. DRAIN
                                            United States District Judge

### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 18, 2025, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager

18